<u>NOT FOR PUBLICATION</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| A.E., : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> COMMISSIONER OF SOCIAL : <br> SECURITY, : <br> : <br> Defendant. : | Civil No. 20-11492 (RBK) <br><br> **OPINION** |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Plaintiff A.E.'s Appeal (Doc. No. 1) from the final decision of the Commissioner of the Social Security Administration denying his application for Social Security Disability benefits. For the reasons set forth below the Commissioner's decision is **VACATED** and **REMANDED.**

**I.   PROCEDURAL HISTORY**

On November 3, 2016, Plaintiff filed an application for Disability Insurance Benefits alleging disability since August 16, 2015 due to anxiety disorder with agoraphobia (R. 79, 172-73). The application was denied on February 15, 2017 (R. 92-96). Plaintiff filed a request for reconsideration on April 20, 2017 (R. 91, 97-99), which was denied on July 5, 2017 (R. 100-102). Plaintiff filed a request for hearing on September 28, 2017 (R. 106-108). A hearing was held before Administrative Law Judge ("ALJ") Nancy Lisewski on March 25, 2019 (R. 42-70). On April 30, 2019, the ALJ issued a decision finding that Plaintiff was not disabled (R. 21-37). The ALJ found that Plaintiff suffered from anxiety and agoraphobia (R. 26, Finding 2). She further found that

1

Plaintiff's impairments did not singly or in combination meet or equal the criteria set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. 27, Finding 3). The ALJ found the following residual functional capacity: "a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform simple, routine tasks, which is non-public and not involving teamwork" (R. 29, Finding 4). She found that Mr. Eosso had no past relevant work to which he could return (R. 35, Finding 5), but that based upon the above-cited residual functional capacity, Mr. Eosso could perform other work existing in significant numbers in the regional and national economy (R. 36, Finding 9). This claim was denied at Step Five of the sequential evaluation process. Plaintiff requested review of the ALJ decision by the Appeals Council on June 24, 2019 (R. 167-171). On June 26, 2020, the Appeals Council denied Plaintiff's request for review, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner (R. 1-7). Thereafter, Plaintiff filed this action for judicial review. (Doc. No. 1).

## II. LEGAL STANDARD

### A. Sequential Evaluation Process

In order to receive benefits under the Social Security Act ("SSA"), the claimant must be disabled within the meaning of the Act. The Commissioner applies a five-step evaluation process to make this determination. *See* 20 C.F.R. § 404.1520.

For the first four steps of the evaluation process, the claimant has the burden of establishing his disability by a preponderance of the evidence. *Zirnsak v. Colvin*, 777 F.3d 607, 611–12 (3d Cir. 2014). First, the claimant must show that she was not engaged in "substantial gainful activity" for the relevant time period. 20 C.F.R. § 404.1572. Second, the claimant must demonstrate that she has a "severe medically determinable physical and mental impairment" that lasted for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 404.1509.

2

Third, either the claimant shows that her condition was one of the Commissioner's listed impairments, and is therefore disabled and entitled to benefits, or the analysis proceeds to step four. 20 C.F.R. § 404.1420(a)(4)(iii). Fourth, if the condition is not equivalent to a listed impairment, the ALJ must assess the claimant's residual functional capacity ("RFC"), and the claimant must show that she cannot perform her past work. 20 C.F.R. § 404.1520(a)(4)(iv); 20 C.F.R. § 404.1520(e). If the claimant meets her burden, the burden shifts to the Commissioner for the last step. *Zirnsak*, 777 F.3d at 612. At the fifth and last step, the Commissioner must establish that other available work exists that the claimant can perform based on her RFC, age, education, and work experience. 20 C.F.R. § 404.1520 (a)(4)(v); *Zirnsak*, 777 F.3d at 612. If the claimant can make "an adjustment to other work," she is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v).

### B. Review of the Commissioner's Decision

This Court reviews the ALJ's application of the law under a de novo standard and the ALJ's factual findings under a substantial evidence standard. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007) (citing 42 U.S.C. 405(g)); *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992); *Monsour Med. CR. v. Heckler*, 806 F.2d 1185, 1191 (3d Cir. 1986)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *See, e.g.*, *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Courts may not set aside the Commissioner's decision if it is supported by substantial evidence, even if this Court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

When reviewing a matter of this type, this Court must be wary of treating the determination of substantial evidence as a "self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). This Court must set aside the Commissioner's decision if it did not take into account the entire record or failed to resolve an evidentiary conflict. *See Schonewolf v. Callahan*, 927 F. Supp. 277, 284–85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). Evidence is not substantial if "it really constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 110, 114).

### III. BACKGROUND

#### A. Plaintiff's Medical History

Plaintiff was 18 years old on the alleged disability onset date of August 16, 2015 (R. 71). He has a high school education received in a special education program that accommodated his anxiety and allowed for home teaching (R. 180-201). Plaintiff has never worked on a sustained basis (R. 35). In January 2016, Plaintiff entered mental health treatment, and Plaintiff's parents or brother generally accompanied him to his visits (R. 340). At his intake visit, Plaintiff reported anxiety and agoraphobia, and symptoms including feeling anxious, tense, panicky, and unable to have a good time, along with dizziness, ear-ringing, fainting, blurred vision, and palpitations (R. 340, 344). On examination, Plaintiff was found to be socially guarded, irritable, suspicious, and have a distressed mood and mildly impaired judgment and contact with reality (R. 345-46). Later in 2016, Plaintiff began to report some improvement, occasionally spending time with friends and driving around the neighborhood (R. 330). In June 2016, Plaintiff experienced a severe panic attack with chest pain, shortness of breath, numbness in his hands and lips, and "a feeling of the world

closing in on him" so he went to the emergency room (R. 318, 321). September and October 2016, Plaintiff reported that he was going outside more and that being in a car provoked less anxiety (R. 326-27).

However, in January 2017, although Plaintiff was getting out more often with family members, he reported that he does not leave the house alone, that he does not have a regular schedule, and sleeps too much (R. 326-28). Later in 2017, Plaintiff reported that he was "still anxious in public" but "doing well" (R. 386-88). Thereafter, Plaintiff worked as a telemarketer, a commissioned-based job that he performed from home for one month (R. 62). Throughout 2018, Plaintiff appeared "stable," but continued to have panic attacks (R. 376).

At his hearing on March 25, 2019, Plaintiff testified from home by telephone due to his anxiety and agoraphobia (R. 49-50). Plaintiff testified that he is unable to leave the house most days if unaccompanied by his parents or his brother (R. 52-55). Plaintiff views the backyard as part of the "comfort zone" of his house (R. 53-54). Plaintiff testified that on his good days he can go outside his house to visit his neighbor, take the trash to the curb, and go to the corner grocery store if accompanied by his mother, while on his bad days he "cannot even go two houses down." (R. 50). Plaintiff also testified that he will likely experience a panic attack if he moves outside his comfort zone, and that he could not attend his hearing because it was "way too far" and he had not been to Pennsauken before (R. 61).

### B. Opinion Evidence

The administrative record contains several opinions and treatment records, listed below.

Rick Sockriter of CJT Behavioral Health of South Jersey was Plaintiff's Licensed Counselor (R. 193). Plaintiff finished the 2014–15 school year as a home bound student at Sockriter's recommendation. (R. 193, 201).

5

Advanced Practice Nurse Frank Stafford treated Plaintiff from January 2016 through January 2017 when Plaintiff entered mental health treatment at Healthcare Commons (R. 342-46). Stafford diagnosed Plaintiff with agoraphobia (R. 340). Stafford prescribed Plaintiff Paxil to treat his conditions (R. 337-38).

Dr. Kyle Stiffler, a psychiatrist, began treating Plaintiff at Healthcare Commons in January 2017, following Plaintiff's treatment with Frank Stafford (R. 376-400). On March 5, 2019, treating psychiatrist Dr. Kyle Stiffler submitted an assessment that his patient's impairments cause a marked inability to maintain attention for two-hour segments; understand, remember and carry out detailed instructions; interact appropriately with the general public; and maintain socially appropriate behavior (R. 401-02). Dr. Stiffler assessed extreme limitation in the ability to maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; deal with normal work stress; travel in unfamiliar places; and use public transportation (*Id.*). Dr. Stiffler also added that his panic and social anxiety limits her patient's cognitive abilities (R. 402). Finally, Dr. Stiffler opined that Plaintiff's impairments would, on average, cause him to be absent from work more than three times a month (Id.). The ALJ rejected Dr. Stiffler's opinion in total (R. 34).

Two non-examining state agency psychologists, Dr. Carlos Jusino-Berrios and Dr. Robert H. Blum, reviewed Plaintiff's file in February 2017 and June 2017, respectively (R. 74-77, 84-88).

Drs. Jusino-Berrios and Blum determined that the record evidence did not establish the presence of the "C" criteria of the Listing 12.06 relating to anxiety and obsessive compulsive disorders (R. 74, 84). Reading their findings together, Drs. Jusino-Barrio and Blum found that Plaintiff had a moderate limitation in remembering detailed instructions, but could remember, understand and carry out simple, one or two step instructions; follow simple work-like procedures; make simple work-related decisions; sustain attention throughout extended periods (up to two hours at a time); perform at a consistent pace particularly if engaged in simple, repetitive tasks; maintain a regular schedule; and work best with occasional contact with supervisors and coworkers, but no contact with the general public (R. 76-77, 87-88).

Jenny Liu-Melita, MA, LMFT, the outpatient director of Healthcare Commons, Inc., wrote a March 2019 letter to Plaintiff's attorney stating Plaintiff would have difficulty participating in his disability hearing in person and recommending that Plaintiff participate via teleconference (R. 403).

Two laypersons, Plaintiff's mother and a family friend, submitted lay statements with observations about Plaintiff's functioning. The statements conveyed that Plaintiff can perform household chores with reminders but cannot leave the house alone because he does not feel safe, and when Plaintiff does try to leave the house accompanied, such as to the therapist, he takes a long time to get ready and mentally prepare himself (R. 252-303).

**C.     The ALJ's Decision**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 3, 2016, the date on which Plaintiff filed his application for SSI (R. 26). At step two, the ALJ found Plaintiff has the following severe impairments of agoraphobia and anxiety (R. 26-27). The ALJ found that these impairments significantly limit the Plaintiff's ability to perform

basic work activities (R. 27). The ALJ also noted Plaintiff's obesity, though she determined that it was not a severe impairment (*Id.*).

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (*Id.*). Specifically, the ALJ found that Plaintiff's agoraphobia and anxiety do not meet or medically equal the criteria of Listing 12.06 (*Id.*). Listing 12.06, Anxiety and obsessive-compulsive disorders, is satisfied by "A" and "B", or "A" and "C." A is satisfied with medical documentation of anxiety disorder or obsessive-compulsive disorder, with certain characteristics. B is satisfied by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: (1.) understand, remember, or apply information, (2.) interact with others, (3.) concentrate, persist, or maintain pace, (4.) adapt or manage oneself. C is satisfied by medically documentation that the mental disorder is "serious and persistent," indicated by a history of the disorder over a period of at least 2 years and evidence of both (1.) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of the mental disorder, and (2.) marginal adjustment, that is, minimal capacity to adapt to changes in the environment or to demands that are not already a part of the claimant's daily life.

First, the ALJ determined that the "paragraph B" criteria are not satisfied because Plaintiff's mental impairments do not cause at least one extreme limitation or at least two marked limitations of area of mental functioning (R. 29). The ALJ found that Plaintiff had only a moderate limitation in all four areas of mental functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself (R. 28).

8

Second, the ALJ found that the "paragraph C" criteria are not satisfied because the evidence does not establish that Plaintiff has only marginal adjustment, or, in other words, Plaintiff does not have only minimal capacity to adapt to changes in his environment or to demands that are already part of Plaintiff's daily life (R. 29). The ALJ determined that there is no evidence that changes in Plaintiff's environment or increased demands have exacerbated Plaintiff's symptoms (*Id.*). Furthermore, the ALJ found that Plaintiff is able to attend to all self-care tasks independently and function outside of his home (*Id.*).

At step 4, the ALJ found that Plaintiff has the RFC to perform a full range of work at all exertional levels while having nonexertional limitations, including Plaintiff's ability to perform simple, routine tasks that are non-public and do not involve teamwork (*Id.*). In making this determination, the ALJ found that Plaintiff's medically determinable impairments could have reasonably caused his symptoms, but that Plaintiff's statements as to the intensity, persistence, and limiting effects of these symptoms was not supported by the medical and opinion evidence in the record (R. 30). Specifically, the ALJ found that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms "are inconsistent because the substantial evidence of record reveals that [Plaintiff] retains the residual functional capacity for simple routine tasks which is non-public and does not require teamwork." (*Id.*).

The ALJ found that Plaintiff consistently improved with treatment, and that his symptoms stabilized with treatment (R. 31, 33). The ALJ accorded significant weight to the opinions of the state agency's non-examining psychological consultants, Dr. Jusino-Berrios and Dr. Blum, because they "are knowledgeable about the Administration's disability programs, rules and regulations." (R. 33-34). The ALJ found their opinions to be consistent with the record that Plaintiff's "symptoms improved and were stable with treatment." (R. 33).

The ALJ then accorded no weight to Dr. Stiffler's medical opinion (R. 34). The ALJ found that Dr. Stiffler's opinion was inconsistent with the opinions of Dr. Jusino-Berrios and Dr. Blum (*Id.*). Dr. Stiffler opined that Plaintiff "has extreme limitations in several areas of functioning, including his ability to maintain regular attendance" and "work in coordination with at proximity to others without being unduly distracted" (*Id.*). Dr. Stiffler also opined that Plaintiff is extremely limited in his ability to travel to unfamiliar places or take public transportation (*Id.*). The ALJ's rationale for according no weight to Dr. Stiffler's opinion was that it was "not consistent with his treating notes wherein he generally assessed the claimant's symptoms improved and were stable with treatment" and because it was not consistent with the opinions of state consultants Dr. Jusino-Berrios and Dr. Blum (*Id.*).

The ALJ accorded partial weight to the opinion of adult outpatient therapist Melita, only to the degree that it was consistent with the RFC. The ALJ found that Melita's opinion was not fully consistent with Plaintiff's activities of daily living or with Dr. Stiffler's treating note that Plaintiff was improving and stable with treatment.

The ALJ accorded partial weight to lay opinion testimony from Plaintiff's mother and from a family friend Kelly Stefanucci. Both laypersons prepared third party function reports on Plaintiff's behalf (R. 35). The ALJ stated that "[t]he observations of such layperson certainly do not outweigh the accumulated medical evidence regarding the extent to which [Plaintiff's] limitations can reasonably be considered severe," and that the lay statements were only partially consistent with the record (*Id.*).

In sum, the ALJ found that Plaintiff's "allegations of disability are partially consistent with the evidence of record." (*Id.*). But the ALJ concluded that Plaintiff is "independent in his activities of daily living" and "made consistent improvement with treatment." (*Id.*) The ALJ found that

Plaintiff retains the residual functional capacity to perform a full range of work at all exertional levels while having nonexertional limitations, including performing simple, routine tasks that are non-public and do not involve teamwork based on the evidence in the record (*Id.*). The ALJ pointed to Plaintiff's "testimony, [Plaintiff's] course of treatment, the diagnostic tests of record, and the opinions of Dr. Jusino-Berrios and Dr. Blum" (*Id.*).

At the fifth and final step, based on Plaintiff's age, education, experience, and residual functional capacity, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform" (R. 36). Based on the above analysis and the testimony of a Vocational Expert, the ALJ found that there are jobs that exist in significant numbers that Plaintiff can perform, including industrial cleaner, surveillance system monitor, and cleaner housekeeper (*Id.*). Accordingly, the ALJ found Plaintiff not disabled (R. 37).

## IV.   DISCUSSION

On appeal, Plaintiff makes the following arguments: (1) the ALJ committed reversible error by improperly rejecting the well-supported opinion of Plaintiff's treating psychiatrist Dr. Stiffler; (2) the ALJ improperly considered whether Plaintiff's mental impairments meet the requirements of Listing 12.06C; and (3) the ALJ improperly rejected the statements of Plaintiff's lay witnesses.

### A.   The ALJ committed reversible error by according no weight to Dr. Stiffler's opinion.

Plaintiff first argues that the ALJ improperly rejected the medical opinion evidence of Plaintiff's treating psychiatrist, Dr. Kyle Stiffler. Defendant argues that the ALJ offered valid reasons for discounting Dr. Stiffler's opinion. We agree with Plaintiff that the ALJ failed to fully weigh and consider Dr. Stiffler's medical opinion evidence in the records. Accordingly, the ALJ's decision is not supported by substantial evidence, and remand is appropriate. *Accord Karge v. Comm'r of Soc. Sec.*, Civ. No. 17-4999, 2018 WL 6077981, at *5 (D.N.J. Nov. 21,

2018) (explaining that, when an ALJ fails "to fully identify, weigh, and consider all of the medical evidence of record, including the medical opinions of Plaintiff's treating physicians," then "the Commissioner's finding is not supported by substantial evidence, and the Court will remand for resolution") (citing *Fargnoli*, 247 F.3d at 42).

The ALJ stated in its decision that is "accords no weight to Dr. Stiffler's opinion" (R. 34). The ALJ reasoned that while

> Dr. Stiffler's opinion is generally consistent with [Plaintiff's] activities of daily living, . . . Dr. Stiffler's opinion is not consistent with his treating notes wherein he generally assessed [Plaintiff's] symptoms improved and were stable with treatment. Further, Dr. Stiffler's opinion is not consistent with the opinions of Dr. Jusino-Berrios and Dr. Blum."

(*Id.*).

The Court finds that the ALJ's decision to give no weight to Dr. Stiffler's opinion was unsupported. The Third Circuit has "held than an ALJ may not simply ignore the opinion of a competent, informed treating physician." *Gilliand v. Heckler,* 786 F.2d 178, 183 (3d Cir. 1986). "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Morales*, 225 F.3d at 317 (internal quotations omitted). Furthermore, "[t]he ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled." *Id.* "In choosing to reject the treating physician's assessment, an ALJ may not make 'speculative inferences from medical reports' and may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." *Id.* (quoting *Plummer*, 186 F.3d at 429).

The ALJ's refusal to accord weight to Dr. Stiffler's is based on her observation that Dr. Stiffler's opinion is inconsistent with his assessment of Plaintiff's symptoms improving and being stable with treatment, and that Dr. Stiffler's opinion differed from those of Dr. Jusino-Berrios and Dr. Blum, the state agency psychological consultants. The ALJ found a contradiction between Dr. Stiffler's notes and opinion where there is none.  Dr. Stiffler's treatment note in October 2016 that Plaintiff was reporting improvement is not inherently inconsistent with Dr. Stiffler's 2019 assessment listing Plaintiff's extreme limitations; it is possible for a patient to report an improvement and still have extreme limitations. Moreover, to the extent the ALJ favored the opinions by the state consultants, who did not examine Plaintiff, over the opinion by Dr. Stiffler, the ALJ has not explained a basis for this preference.

**B. The ALJ applied an incorrect legal standard to the analysis of Listing 12.06C, and the record is without substantial evidence that Plaintiff functions outside of his home.**

The ALJ found that Plaintiff's mental disorder was not "serious and persistent," in that it did not meet the criteria under 20 C.F.R. Part 404, Subpt. P, App. 1, Section 12.06C. The ALJ's only explanation is that "There is no evidence that changes or increased demands have led to exacerbation of the claimant's symptoms and signs and to deterioration in the claimant's functioning. The claimant is able to function outside his home, and is able to attend to all self-care tasks independently" (R. 29). Listing 12.06C does not require that Plaintiff provide evidence that changes or increased demands led to an exacerbation of his symptoms or deterioration of his functioning. That is a different evidentiary requirement from the one actually contained in Listing 12.06C, which is "minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life." Because the ALJ imposed her own evidentiary requirements that are different from Listing 12.06C, we remand.

13

Moreover, there is not substantial evidence for the statement that Plaintiff "is able to function outside his home." None of the reports ALJ cited for this statement suggest that Plaintiff is able to function outside his home or even that he leaves his home. Without substantial evidence to support this finding, we remand.

### C. The ALJ's partial rejection of lay witness statements was not explained.

The ALJ assigned partial weight to the lay witness statements because they are "casual observation, rather than objective evidence and or medical tests." If it were the case that lay witness statements must be partially rejected purely on the basis that they are not medical evidence, then that would be true of all lay witness statements, and they would all be assigned partial weight as a rule. But this is not the case. The adjudicator is to "consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file." SSR 16-3p. Here, the ALJ did explain what was consistent or inconsistent between the lay witness statements and the rest of the evidence of record; instead, she gave only partial weight at the outset because they were lay. This is out of keeping with the analysis prescribed by the Social Security Administration, so we remand.

### V. CONCLUSION

For the reasons discussed above, the Court cannot find that the ALJ's determination is supported by substantial evidence. As a result, the Court will vacate the ALJ's decision and remand this matter to the ALJ for further proceedings consistent with this opinion. An order shall issue.

Dated: 12/14/2021               /s/ Robert B. Kugler
                                ROBERT B. KUGLER
                                United States District Judge